State *v.* Hanchett.

———•◦•———

STATE *vs.* ALBERT HANCHETT.

A complaint brought to a justice of the peace who resided and held his court within the corporate limits of the city of Meriden, alleged that the accused, "in the town of Meriden and without the corporate limits of the city of Meriden, kept and maintained a house of ill-fame, resorted to by various persons for the purposes of prostitution and lewdness." On the trial of the complaint the justice bound the accused over for trial in a recognizance conditioned that

he should appear before the Superior Court, "to answer to the aforesaid complaint and abide the judgment that may be rendered thereon by said Superior Court."

Held—1.   That the provisions of the act incorporating the city of Meriden which relate to the establishment and jurisdiction of a police court, (Act of 1867, ch. 53, secs 29, 30, 32,) refer only to offences committed outside of the limits of the city, and that therefore the justice had jurisdiction of the complaint.   2. That the complaint was sufficient.   3.   That the recognizance.was sufficient to hold the accused for trial upon that complaint.

GRAND JUROR'S COMPLAINT for keeping a house of ill-fame; brought to a justice of the peace of the town of Meriden, who bound the prisoner over for trial before the Superior Court. The prisoner pleaded in abatement, demurred to the complaint, and moved to erase the case from the docket.   The questions arising on these pleadings were reserved for advice.   The points decided will sufficiently appear from the opinion.

*D. R. Wright,* for the defendant.

1.   By the terms of the charter of the city of Meriden, a justice of the peace cannot *hold* his court within the incorporated limits of that city, when sitting for the trial of a criminal complaint; and it makes no difference whether the crime charged in the complaint was committed within, or outside of, said city limits.   Acts of 1857, 50, sec. 29.   *State* v. *Clegg,* 27 Conn., 593; *Neth* v. *Crofut,* 30 id., 585.

2.   The complaint charges in a single count two offences, and is therefore bad for duplicity; it is also faulty for that no statutory offence is charged.   Gen. Stat., 266, sec. 134.   *Commonwealth* v. *Symonds,* 2 Mass., 163; *Barth* v. *State,* 18 Conn., 439; *Brown* v. *Commonwealth,* 8 Mass., 64; *Smith* v. *State,* 19 Conn., 493; *Rawson* v. *State,* id., 292; *Commonwealth* v. *Eaton,* 15 Pick., 273; *Barnes* v. *State,* 20 Conn., 232; *State* v. *Corrigan,* 24 id., 286; Gould Pl., ch. 9, sec. 20.

3.   The recognizance taken by the justice being unauthorized by statute is wholly void.   Gen. Stat., 281, secs. 215, 216; *Billings* v. *Avery,* 7 Conn., 236; *Darling* v. *Hubbell,* 9 id., 350; *Sturges* v. *Sherwood,* 15 id., 149.

*Fay,* for the state, cited *State* v. *Clegg,* 27 Conn., 593;

*Wickwire* v. *State*, 19 id., 477 ; *Prosser* v. *Chapman*, 29 id., 521 ; 1 Bish. Crim. Proc., §§ 190, 191, 192, 193, and notes ; § 334 and notes ; *Commonwealth* v. *Harney*, 10 Met., 422–425 ; *Barth* v. *State*, 18 Conn., 439 ; *State* v. *Corrigan*, 24 id., 288 ; 1 Chitty Crim. Law, 231 ; Gen. Stat., 281, secs. 215, 216 ; *State* v. *Pritchard*, 35 Conn., 319 ; Acts of 1866–67–68, 189, ch. 76 ; *Peck* v. *State*, 2 Humph., 78.

CARPENTER, J. Three questions are presented by the record in this case.

1. The first arises under the plea in abatement, the ground of which is that the justice of the peace before whom it was originally tried, resided and held his court within the limits of the city of Meriden, the offence having been committed, if committed at all, in the town of Meriden without the city limits. It is obvious that this question depends upon the construction of the city charter. All persons residing within the limits of the town, including the city, are subject to the same duties and entitled to the same privileges, as they would have been had the city not been incorporated, except so far forth as those duties and privileges have been changed or modified by the act of incorporation. The charter establishes a police court, prescribes its powers and duties, and defines its jurisdiction. Its jurisdiction extends only to cases arising within the limits of the city, as will appear by a reference to the 29th and 32d sections. *State* v. *Clegg*, 27 Conn., 593. All other cases remain as they were, subject to the action of the town authorities. All the provisions of the charter relating to the criminal jurisdiction of the police court, have reference to cases arising within the city limits ; and when the charter provides, as it does in the 30th section, that no other person within the incorporated limits of said city, " shall have, use, or exercise any of the powers specified and mentioned in the preceding section &c," it must be understood as applying only to cases within the jurisdiction of the police court. The phrase " within the incorporated limits of said city" is not to be taken by itself and applied to the *residence* of the justice, or to the *place* where he discharges the duties of his office,

but is to be taken in connection with what follows, and the whole taken together means simply that the jurisdiction of the police court over criminal matters arising within the limits of the city shall be exclusive. The charter neither in terms, nor by necessary implication, has any reference to cases arising without the city limits.

2. The next question relates to the sufficiency of the complaint. It is insisted in the first place that it is bad for duplicity. The statute makes it an offence to keep a house of ill-fame, resorted to for purposes of prostitution or lewdness. The complaint alleges that the defendant kept such a house, resorted to for purposes of prostitution *and* lewdness. The defendant claims that two offences are charged. We do not care to distinguish between prostitution and lewdness; whatever difference there may be is one of degree merely; and no distinction that can be properly taken will benefit the defendant. The offence consists not merely in the purposes for which the house was resorted to, but three things must combine to constitute the offence;—the defendant must keep a house; it must be a house of ill fame; and it must be actually resorted to for purposes of prostitution or lewdness. The statute contemplates but one purpose, and that cannot be so divided as to lay the foundation for two offences in one and the same act of keeping a house of ill fame.

The defendant further claims that the complaint is insufficient, and fails to allege a statutory offence, because it alleges that the defendant did "keep and maintain" a house of ill fame &c. The statute uses the word "keep" only; the word "maintain" is not found in the section on which this complaint is brought. If, therefore, there is a substantial difference in the meaning of the two words, that section does not make it an offence to maintain such a house. In that view of the case, the fact that more is alleged than the statute requires does not vitiate the complaint, inasmuch as the superfluous description does not embrace a distinct, independent offence. But we are satisfied that the two words as used in this complaint are synonymous terms, and were so intended by the pleader.

3. The defendant, in the third place, files a motion in

writing that the cause be erased from the docket, on the ground that the recognizance taken by the justice does not conform to the requirements of the statute. The statute, p. 282, sec. 216, provides that the bond shall be " conditioned that he shall appear before the next Superior Court to be holden in the county where the offence charged in said complaint was committed, to answer to said complaint, and abide the order or judgment of said court touching said complaint, or the matters charged therein." The bond taken requires the defendant to appear before the Superior Court "then and there to answer to said complaint whereon the aforesaid judgment has been rendered, and that he abide the judgment that may be rendered thereon by the Superior Court." The difference seems to be that the bond taken limits the action of the Superior Court to proceedings upon the identical complaint used before the justice; while the statute contemplates that the order or judgment of the Superior Court may be "touching said complaint or the *matters* charged therein." We do not think the bond is void. It is clearly sufficient to hold the defendant to trial on that complaint, and to abide the judgment that may be rendered thereon by the Superior Court. Whether it would be sufficient to hold the defendant to trial upon a new information filed by the attorney for the state, is a question we need not now discuss, as it is legally competent for the attorney to try him upon the original complaint. For that purpose, and to that extent at least, the bond is good both in form and substance. In the case of *State* v. *Pritchard*, 35 Conn., 325, in giving the opinion of the court, and speaking of cases of binding over to the Superior Court by justices of the peace, I say that " the practice has always been for the attorney for the state to file a new information." I was induced to use this language from my own knowledge of the practice, and in doing so expressed myself too strongly ; for I am now informed by my brethren that a contrary practice has prevailed to some extent throughout the state. I make this correction lest our present decision should seem to be inconsistent with that. I did not intend in that opinion to affirm the legal necessity of a new information, and my associates so understood me.

We are also of the opinion that the second section of the Act of 1868, p. 189, applies to this case. It is there provided that the bond shall not be discharged "for any mistake in form, provided the substance and meaning thereof are sufficient to require the appearance of the accused to answer the complaint." That this bond is sufficient for that purpose we have already seen. The mistake in the bond, or its variance from the terms of the statute, if not strictly a "mistake in form," is manifestly within the spirit of the act. Doubtless the legislature intended that the court should not require technical accuracy in bonds taken by justices of the peace, and it is our duty to interpret the statute accordingly.

For these reasons we advise the Superior Court to render judgment against the defendant upon each of the issues raised upon the record.

In this opinion the other judges concurred.